**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **JOSEPH HUERTA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-00213** |
| | § | |
| **PHILLIPS 66,** | § | |
| | § | |
| **Defendant.** | § | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION

FOR SUMMARY JUDGMENT

Comes now Plaintiff and files this, his response to Defendant's Motion for Summary judgment as follows.

## Summary of statement of facts

Plaintiff, Joseph Huerta, is a 52 year old Mexican American, born in Bay City, Texas on April 1, 1968; he was hired by Phillips 66 (Phillips) 1990, where he worked for 28 years as an operator assigned to Phillips' Sweeny Refinery. Plaintiff is a type 2 diabetic and he his blood pressure which was unusually high on the day in question; on May 7, 2018, after completing a work shift Plaintiff called the lead Operator Mr. Buentello, advising that he would be taking off work on May 8, 2018, he did not give a return to work date. Plaintiff sought and was ultimately granted approval of leave pursuant to The Family Medical Leave act (FMLA) on 5/17/18, retroactive to May 8, 2018. During Plaintiff FMLA leave on May 29, 2018, he was threatened by Crystal King of Phillips Human Resources department with termination for Job Abandonment effective on June 1, 2018. On June 8, 2018, Plaintiff was terminated by Crystal King for Job Abandonment,

because of his failure to come to the work place to meet with Human Resources department. Phillips has 13,500 employees worldwide; Phillips does not have a written job abandonment policy in its employee handbook. Subsequent to his termination Plaintiff sued Defendants for violations of one or more of Plaintiff's rights guaranteed by: (1.) Family Medical Leave Act, (2.)Title VII of the Civil Rights Act of 1964 ("Civil Rights Act"), as amended, 42 U.S.C. § 2000e et seq; (ii) (3.) The Age Discrimination in Employment Act of 1967, ("ADEA") as amended, 29 U.S.C. § 621 et. seq.; and (4.)The American with Disabilities Act. Of 1990, as codified, 42 U.S.C. §§ 12112 to 12117. Phillips has denied engaging in any unlawful employment practices whatsoever.

## STATEMENT OF FACTS

Headquartered in Houston, Texas, Phillips 66 is an advantaged downstream company, with 13,500 employees worldwide, sees Declaration of Krystle King, see Exhibit "1" at ¶4. Prior to his termination, Plaintiff was employed Phillip 66 for approximately 28 years, he was assigned to the Sweeny Refinery as an operator, See Exhibit "14" at 2 Plaintiff's declaration. On May 7, 2018, Plaintiff worked he regular 12 hours shift, after completing his shift Plaintiff's learned that his glucose and blood pressure were unusually high so he called his lead operator, Mr. Buentello and as per established procedure and advised him that he was reporting off for May 8, 2018. Exhibit "14" at 6. The Lead Operator on Unit 27, was Mr. Buentello, after speaking to Plaintiff, Buentello contacted Jeff Farley, the supervisor of Unit 27, to which Plaintiff was assigned. Buentello speculated to Farley about the reasons Plaintiff reported off work, claiming that Plaintiff had lied about why he wanted to be off work and speculated that Plaintiff did not want to work the console see Exhibit "2" at 9. Apparently after speaking with Buentello, on May 8th ,

2018, Farley, on Plaintiff's first day off sick and based on what was made know to him by Buentello, Farley sent an email to Krystle King, of Human Resource requesting that a private investigator be immediately engaged to tail Plaintiff, King complied with his request. See Exhibit "3". Apparently after speaking with Farley, King sent an email to Mr. Michael Saiz, Human Resources Manager for Phillips (see Exhibit "15"deposition of Saiz Page 7, line 25) and King sent an email to Saiz requesting that a private investigator be put on Plaintiff, see Exhibit "4" second page. Saiz agreed to deploy surveillance on Plaintiff (See Exhibit "4". First page) The aforesaid all took place on the first day Plaintiff was off sick (May 8, 2018) and before Plaintiff had seen his doctor. The next day, May 9th, the investigator sent a report to Saiz claiming Plaintiff had been seen having lunch, working on the roof of a building and coaching little league game. (see Exhibit "5")  After receiving an email from the investigator on May 9, 2018, Exhibit "5" , Saiz sent an email to several individuals including King saying "FYI, this further cements the case with Huerta. I want him to see medical today and implicate himself on why he's out. We'll discuss a path forward after his medical update." Ibid. top of page. Significantly Saiz claims that he did not know Plaintiff was a diabetic until after he was fired (see Exhibit "6" at 8) Where Saiz also claims he did not know Plaintiff was on or had requested FMLA until after Plaintiff was fired on June 8, 2018. Saiz was dissembling. See Exhibit "7", Exhibit "8" and see Exhibit "11") all are dated before Plaintiff termination, Note that Plaintiff's first and second Employee Health Report provided to Phillips and verified. See Exhibit"7" & "8") Plaintiffs second Employee Health Report dated May 15, 2018. Roseann Buentello, the Phillips Nurse was ask during her deposition whether she discussed Plaintiff's FMLA with Saiz and she testified that she discussed Plaintiff's FMLA with Saiz  a few times ( see deposition of Roseann Buentello, at Page 36 Lines 17-25) Roseann Buentello also testified that she knew

Plaintiff was diabetic (( see Exhibit "16", deposition of Roseann Buentello, at Page 25 Lines 6-8, and see Page 33, Lines 8-12) .Nurse Buentello also discussed Plaintiff's FMLA with King, ( see Exhibit "16"deposition of Roseann Buentello, at Page 37 Lines 3-11).

`and see deposition of Krystle King, Exhibit "17", Page 27, and Lines 19-22). King knew or should have known that there was no policy of terminating employees over not meeting some short term disability requirements and that there was no Job Abandonment policy . Nonetheless King was so eager to fire Plaintiff, King sent Plaintiff a letter dated May 29, 2018, in which she said: "It is imperative that you contact Krystle King (sic) at 979-491-2092 or 317-500-8687 no later than close of business Friday June 1, 2018. If you fail to meet this requirement, Phillips 66 will consider that you have abandoned your position and your employment will be terminated immediately." See Exhibit "9". It appears that King was actively searching for a reason to or a way to terminate Plaintiff when in fact she knew Plaintiff was not abandoning his job. See Exhibit "17", King Deposition testimony at Page 32 Lines 8-24.

King clearly knew or should have known that Plaintiff was on FMLA, see Exhibit "11" nonetheless she sent Plaintiff a final letter to Plaintiff dated June 8th, 2018, in which she terminated Plaintiff for allegedly abandoning his Job while she knew or should have known that Plaintiff was off work on approved Family Medical Leave Act. See Exhibit "10" and see Exhibit "16", deposition of Roseann Buentello, at Page 37 Lines 3-11.

Phillip 66 claimed that the reason Plaintiff was terminated was because of Job Abandonment however Plaintiff claims he never abandoned his Job, rather he was off work on approved Family Medical Leave because of sustained rise in his blood pressure and glucose level, See Exhibit "14", at 8 and as instructed by Phillips he stayed in contact with Human Resources and the other designated Departments. Further Plaintiff had even told King who fired him for job abandonment

that he specifically was not abandoning his job See Exhibit "17", King Deposition testimony at

Page 32, Lines 8-10.

On or about May 17, 2018, Plaintiff spoke with Sweeny Refinery nurse Mrs. Buentello, who

advised him that Phillips had received his employee health report from his treating Physician and

that any further correspondence would be from Bartlesville instead of the Sweeny refinery.  (See

Exhibit "14", 14.  Although Plaintiff had made it clear to Phillips that he was not abandoning his

job as testified to by King, nonetheless on June 8, 2018 he was terminated allegedly for

abandoning his Job he had held for 28 years. See (Exhibit "10")

The events leading to Plaintiff's termination started after his workday on May 7, 2018, when
Plaintiff called in sick on account of his blood pressure and glucose level were extremely high,
on calling in Plaintiff spoke with the Buentello the lead operator in charge. See Exhibit "14" at 6.
On May 8th, 2018, Plaintiff spoke directly with Nurse Buentello about his diabetic condition.

On May 9th, 2018, Plaintiff had a doctor's appointment and had the doctor's office fax his
employee report directly to Nurse Buentello. See (Exhibit"14" at 14.

On May 10, 2018, Plaintiff had an appointment with the medical Labatory to get his blood work
completed, and on that same day he spoke with Sweeny Refinery nurse Buentello. See
Exhibit_"14" at 14.

On May 11, 2018, Plaintiff called the Sweeny Refinery and checked in with Nurse Buentello.
See Exhibit_"14" at 14.

On May 14, 2018, Plaintiff called into the Sweeny Refinery to check in and spoke with Nurse
Buentello. See Exhibit_"14" at 14.

On May 15, 2018, Plaintiff had a doctor's appointment and faxed in a second employee health
report to Nurse Buentello see Exhibit "8".

On May 16, 2018, Plaintiff called into the Sweeney Refinery to check in and spoke with Nurse
Buentello. See Exhibit_"14" at 14.

On May 17, 2018, Plaintiff called into the Sweeney Refinery to check in and spoke with Nurse
Buentello, during this call Nurse Buentello stated to him that they had received his employee
health reports and that there was nothing further that she would need from him and that he no

longer needed to call every day and report to her and from then on any correspondence would be through Bartlesville instead of the Sweeny refinery. See Exhibit_"14" at 14.

As stated above On May 17, 2018, it was verified that the correct health service clinic had received his completed employee health reports as verified Exhibit "8" by Phillips apparently through Nurse Buentello...

Sometimes between May 19 and May 22, Plaintiff received another correspondence from Bartlesville Oklahoma, Phillips 66 Absence Management Department, this correspondence was the designation notice for the family and medical leave act that is dated May 17, 2018, which stated in part " we have reviewed your request for leave under the FMLA and any supporting documentation that you have provided, we received your most recent information on documentation that you have provided, we received you most recent information on May 17, 2018, and decided you FMLA leave provided there is no deviation from your anticipated leave schedule the following number of days or weeks will be counted against your leave entitlement , May 8 2019 to unknown. (see Exhibit "11") That letter was postmarked May 17, 2018 and See Exhibit_"14" at 14.

On May 21, 2018, Plaintiff missed a call from Krystle King which came in at 4:46 PM, a voice mail was left by King stating she had a couple of questions and to call her back, Plaintiff  called her back, but she did not answer so Plaintiff left her a message, King's message was recorded (See Exhibit_"14"  at 14.

On May 22, 2018, at 8:55 AM, Plaintiff missed a call from King, however she left a voice message stating that Plaintiff was required to come out to the plant and meet with Human Resources, this message is recorded See Exhibit_"14"  at 14. Plaintiff called King back and left her a message that he was on approved FMLA and that he had provided or returned all of the requested documentation that Bartlesville had asked for and that Bartlesville had asked for and that Bartlesville Absence Management had all of his current paper work. Plaintiff does not know what time he listen to the message from King or the time he returned her call however he has documented that she called and that he replied. See Exhibit_"14" at 14.

There were no other missed calls or voicemails from Krystle King until June 4, a certified letter was received that was dated May 29, 2018. (see Exhibit "9") and See Exhibit"14 at 14.

On May 31, 2018, Plaintiff received a UPS from Bartlesville, OK, regarding short term disability benefits, the letter was dated May 25, 2018, See Exhibit "11" and Exhibit "18" requesting

another EHR be submitted, Plaintiff took that letter and form to his physician who filled out another health Report and faxed it to: 979-491-2440 at 2:49 PM.

On June 4th, 2018, Plaintiff missed a call from Krystal King which came in at about 4:40 PM, Plaintiff called her back, this message was recorded See Exhibit_"14" 14.

On June 6th, Plaintiff missed a call from Krystal King that came in at about 2:06PM, Plaintiff called her back.

On June 6, 2018 Plaintiff missed call at 3:34 PM , from Krystal King, she left a voice mail, King stated she got Plaintiff's  message and to call her back, this message is recorded See Exhibit_"14" at 15

June 7, 2018 Plaintiff spoke with Krystle King 3:07 pm , she set a mandatory meeting with Plaintiff  for June 8, Plaintiff  did not agree to go to such a meeting, she then consented to  a phone meeting to be done right then while we were on the phone, however during the phone meeting after asking some questions of Plaintiff  she then said never mind and you are required to be here tomorrow, Plaintiff replied that since he was on approved FMLA that he would call his physician and speak with him before he agreed to a meeting or a time and would call her back, this call is recorded. See Exhibit_"14" at 15) June 8, 2018 Plaintiff called Krystle she did not answer, Plaintiff left her a message advising King that  would not be there for a meeting and he was not abandoning his job, that he was on approved FMLA and had not yet been able to talk to his physician, this call is recorded . See Exhibit Exhibit_"14" at 14)

June 11, 2018, Plaintiff received a certified mail from Bartlesville regarding short term disability benefits letter dated June 4, 2018 see Exhibit "19" exhibit 6 to king's deposition.

June 11, 2018 Plaintiff  called and spoke with his HR connections in Bartlesville Oklahoma he spoke with Harriet and Sandy C they both stated that he was on approved FMLA and still had days left of FMLA, Plaintiff  was told also at that time that if he filled out another employee health form that his short term disability could be reinstated See Exhibit "14"  at15)  June 12,

2018 re, Plaintiff received a certified letter from Phillips 66 Sweeny Texas , this was the termination letter dated June 8, 2018 from Krystle King. Exhibit "10". Ending his 28 year career with Phillips while he was on FMLA leave.

## ARGUMENT AND AUTHORTIES

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When this court is ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the Plaintiff who is the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Washburn, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Matsushita, 475 U.S. at 586

Plaintiff urges this court to deny Defendant's Motion for Summary Judgment because this Court, in evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, the court must as aforesaid,  view facts and inferences in the light most favorable to the party opposing the motion. See Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir.2001). Further, factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Again, in evaluating evidence to determine whether a factual dispute exists, credibility determinations are not part of the summary judgment analysis. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the a jury is not required to believe, and should give credence to the evidence favoring the non-moving party, as well as that evidence

supporting the moving party that is <u>uncontradicted and unimpeached</u>." <u>Roberts v. Cardinal</u> <u>Servs., 266 F.3d 368, 373 (5th Cir.200</u>

Phillips, in its Motion for Summary Judgment has not presented any evidence that is <u>uncontradicted and unimpeached</u> as will be shown hereinafter.

In this case, the Plaintiff alleges that he sought and was granted leave under the Family Medical leave Act because of a personal illness, Plaintiff's Medical records were submitted to Defendant and ultimately Phillips approved Plaintiff's request for leave under the Family Medical Leave Act. (See Exhibit "11"). On Plaintiff's first day off work his lead operator and his supervisor speculated that the reason Plaintiff took off work was because his lead Operator had told him he would be working the console on unit 27 on his next shift, this is <u>not summary Judgment evidence</u>, rather it is rank speculation.   On Plaintiff's first day off his Supervisor Jeff Farley and his lead operator collectively claimed  they was suspicious and speculated that Plaintiff wanted to be off work because he did not want to work the console so because of his feelings of suspicion Farley sent an email to Crystal King requesting that a private detective be retained to follow and record Plaintiff's movements see (Exhibit "3") , Crystal King immediately sent an email to Michael Saiz, the Manager of Human resources manager at the Sweeny Refinery requesting that a PI be put on Plaintiff who immediately granted King's request see ( Exhibit"4" ) Saiz also sent an email to King and others in which he stated " FYI…this further <u>cements the case with Huerta</u>. I want him to see medical today and implicate himself on why he's been out. We'll discuss a path forward after his medical update..." (See Exhibit"5") Although Saiz does not come out directly and say what case he is talking about the suggestion appears to be for firing Plaintiff or finding something wrong with Plaintiff being off work sick.

Significantly neither King, Farley, Saiz nor Plaintiff's Lead operator Buentello had any <u>uncontradicted or unimpeached</u> evidence that a jury would be required to believe that supported their collective suspicious belief that Plaintiff was not ill or that he was faking his illness apart from <u>just rank speculation</u> which is not summary Judgment evidence. On the other hand, Plaintiff contends that the fact that he was to work the console had nothing to do with him being off and that he was off work because of his health condition on May 8, 2018, more specifically Plaintiff took off because diabetes and blood pressure was not controlled.  Plaintiff contends that working

the Console was a job on which Plaintiff was certified and a Job he had already been performing. (see Exhibit "14" at 5). There was nothing suspicious about Plaintiff calling in sick, he was following established per Procedures, rather the real reason was because Plaintiff's Supervisor was prejudice and was attempting to make Plaintiff look bad because Farley was a racist and he was looking for a way to fire Plaintiff Joseph Huerta who was Hispanic and based on past experience with Farley, he just did not want Plaintiff working on his unit. (see Exhibit "14" at 10). The reason Plaintiff asserts that his supervisor Farley was a racist is because when Farley would first enter the control room, on any day, where all of the Operators were congregated including Joseph Huerta, Farley would speak to each Operator individually but Farley would intentionally not speak to Joseph Huerta, Farley acted as if Plaintiff was invisible or just not there. Farley's act of not speaking to Plaintiff, was not for any legitimate business reason rather it was obvious show of discrimination intended to hurt Plaintiff and make him feel as if he was invisible or otherwise not in the control room and to make Plaintiff feel  unwelcomed or miserable in the workplace. See Exhibit "14" at 10)  The Only time Farley would speak to Plaintiff, it would be in a demeaning manner and was to criticize him or find some fault with the way Plaintiff was doing his job. Farley's criticizing and fault finding of Plaintiff was incessant. (See Exhibit "14" at 10, as he never spoke to Plaintiff. Farley appeared to automatically assume he was superior to Plaintiff and acted accordingly.    Once Plaintiff took off work on May 8, 2018, he was harassed frequently with Phone calls and demands by King.  (See Exhibit "14" at 14).

Defendant's investigator was assigned to surreptitiously followed Plaintiff on May 8 and May 9th, and perhaps other days with the expectation that Plaintiff would some do something that could be used against him so Phillips could find a way to fire him. The investigator reported Plaintiff's innocent activities to Phillips as if there were something inappropriate going on. When for example, when reporting that Plaintiff was working on top of a commercial building and coaching little league baseball without fully understanding or allowing Plaintiff to explain his activities whatsoever.   The fact of the matter is that Plaintiff's coaching little league baseball as

third base coach was done at night no more than ten minutes at a time and it was in an environment that helped relieve the stress Farley cause Plaintiff to work under and relieve his tension. Further working with little leagues was considered to be community Service by Phillips employees but apparently not by Plaintiff.  Further the heaviest thing item pick up as a third base coach would be a ball or a bat.   Regarding the investigator's claim that Plaintiff was working on top of a commercial building is pure poppy cock, the building in question is owned by Plaintiff so he was on top of his own building for a short while supervising a worker doing some repairs on top of Plaintiff's building. (see Exhibit "14" at 27). This court should note that when the depositions of King and Saiz was taken and when they presented declarations they both lied to try to avoid liability for retaliating against Plaintiff motivated by the fact that Plaintiff was on FMLA and was claiming he was disabled, however the King and Saiz's unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. Both King and Saiz lied when they individually claimed that they did not know Plaintiff requested FMLA related to diabetes until after he was discharged (see Exhibit "6" Saiz declaration at 8) and see Exhibit "1" King's declaration at 14 and see Exhibit "16"the Deposition testimony of Nurse Buentello at Page 36 Lines 17-21. Nurse Buentello's testimony clearly contradicts the dissembling of both King and Saiz. Regarding Saiz, given during her deposition, Nurse Buentello was ask: on page 36, at line 17, Okay. Did you discuss Mr. Huerta's FMLA with Mr.—with Mr. Saiz, S-a-i-a?  Answer: "Yes". Q: On a few or many occasions? A. on a few. Regarding King, in /Exhibit "16" on page 37 of Buentello's deposition Lines 3-15, Nurse Buentello testified as follows: Line 3: Q: did you discuss Mr. Huerta's FMLA with Ms. King? A: Yes.

At Line 6, Q: what did you discuss with Ms. King? At lines 7-11 A: The same thing. She questioned if he was providing proper documentation on his absence and whether or not it was getting approved and –and did I need anything else, same—same discussion as with Saiz. This Honorable court should note that in *St. Mary's Honor Center* v. *Hicks,* 509 U. S. 502, 511, the Court stated that, because the fact finder's disbelief of the reasons put forward by the defendant, together with the elements of the prima facie case, may suffice to show intentional discrimination, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive. See *id.,* at 517. That court reasoned that in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. See, *e. g., Wright* v. *West,* 505 U. S. 277, 296. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567,577 and see  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 154 (2000) Clearly for this court to resolve the conflict between  Buentello, Saiz and King would require a credibility determination. Plaintiff contends that a reasonable Jury could believe the testimony of Nurse Buentello and a Jury could believe that King and Saiz were conspiring to violate the law.

Clearly a Plaintiff's prima facie case of discrimination (as defined in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802 (1973)), combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Compare *Kline* v. *TVA*, 128 F.3d 337

(CA6 1997) (prima facie case combined with sufficient evidence to disbelieve employer's explanation always creates jury issue of whether employer intentionally discriminated); *Combs* v. *Plantation Patterns*, 106 F.3d 1519 (CA11 1997) (same), cert. denied, 522 U.S. 1045 (1998); *Sheridan* v. *E. I. DuPont de Nemours & Co.*, 100 F.3d 1061 (CA3 1996) (same) (en banc), cert. denied, 521 U.S. 1129 (1997); *Gaworski* v. *ITT Commercial Finance Corp.*, 17 F.3d 1104 (CA8) (same), cert. denied, 513 U.S. 946 (1994); *Anderson* v. *Baxter Healthcare Corp.*, 13 F.3d 1120 (CA7 1994) (same); *Washington* v. *Garrett*, 10 F.3d 1421 (CA9 1993) (same), with *Aka* v. *Washington Hospital Center*, 156 F.3d 1284 (CADC 1998) (en banc) . As has been demonstrated herein, a Plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that Plaintiff should not be routinely required to submit evidence over and above proof of pretext), and with *Fisher* v. *Vassar College*, 114 F.3d 1332 (CA2 1997) (en banc) (plaintiff must introduce sufficient evidence for jury to find both that employer's reason was false and that real reason was discrimination), cert. denied, 522 U.S. 1075 (1998); *Rhodes* v. *Guiberson Oil Tools*, 75 F.3d 989 (CA5 1996) (same); *Theard* v. *Glaxo, Inc.*, 47 F.3d 676 (CA4 1995) (same); *Woods* v. *Friction Materials, Inc.*, 30 F.3d 255 (CA1 1994).

On the issue or replacing Plaintiff after he was terminated. In an attempt by Phillips to escape liability according to law, Farley claims that Plaintiff was not replaced after he was terminated, rather that Plaintiff's responsibilities were distributed among other operators See Exhibit "2" at 11. This Is an attempt by Defendant to cleverly avoid liability under the law for Plaintiff's claim of disability discrimination, National origin discrimination and liability for retaliating against and terminating Plaintiff while he was on FMLA. Plaintiff alleges that the reasons given for his termination is a pretext for discriminating against him on account of his disability and National Origin and for taking FMLA leave. That the Distributing Plaintiff's duties among the other operators as Defendant claims they did after firing Plaintiff could just as easily been done while he was on FMLA leave see  (Exhibit "11")  as it was done after he was run off or fired. Here Plaintiff has presented sufficient evidence to show that Phillips was aware of his physical impairments, his diabetes before it decided to terminate him. For example, both Farley, his direct supervisor, Saiz and Phillips Nurse Buentello, who processed his FMLA leave, knew or should have known that Plaintiff had diabetes. There are questions of fact about which a reasonable jury could believe which would suggest there are questions of fact about what King, Farley and Saiz

all knew that Plaintiff had diabetes that such was the reason he was on FMLA. A reasonable jury could believe that King, Farley and Saiz were dissembling to cover up Phillips discrimination and Plaintiff's discrediting of Phillip's explanation is entitled to considerable weight, such that plaintiff should not be routinely required to submit evidence over and above proof of pretext.

The evidence herein shows that questions of fact about which reasonable minds could differ as to whether Plaintiff was discriminated against, retaliated against and subjected to an adverse employment action that would not have occurred but for his disability, and retaliation for engaging in the protected activity of complaining about discrimination, and whether his National Origin was a motivating factor in or for the adverse employment action taken against him and finally that whether Plaintiff was retaliated against and terminated because exercised he lawful rights under The Family Medical Leave Act.

As this court knows well, The Family and Medical Leave Act contains two distinct provisions: (1) an Entitlement clause and (2) an anti-discrimination clause. See 29 U.S.C. §§ 2612, 2615. The Entitlement clause provides a series of entitlements which give certain rights to employees such as the right to have their job back once they return from a qualified leave. FMLA also contains provisions prevent an employer from retaliating against an employee for taking FMLA leave. See 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b). Evidence suggests that that Defendant is in willful violation of the FMLA. Defendant violated 29 U.S.C. §2612, §2614 and 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b). 21. Plaintiff availed himself of a protected right under the FMLA and was subsequently terminated. There is a causal connection between the Plaintiff's protected activity and Defendant's decision to terminate him jumps out at one. Plaintiff's taking of FMLA was a motivating factor in the decision to terminate him, and as such was a cause of Plaintiff's damages. Any employee who takes FMLA leave under section 2612 shall be entitled,

on return from such leave, to be restored by the employer to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. See 29

U.S.C. §2614(a) (1). Furthermore, the taking of FMLA leave under section 2612 <u>shall not result in the loss</u> of any employment benefit accrued prior to the date on which the leave commenced. See 29 U.S.C. §2614(a) (2). Phillips violated the aforesaid provisions of the FMLA by terminating Plaintiff while he was on FMLA and/or refusing to reinstate him into him position following his FMLA leave. Plaintiff has presented probative evidence to establish a genuine issue of material fact his claims of discrimination and retaliation that would not have occurred but for his disability and his engaging in the protected activity. The aforesaid is clearly evidence that a jury could believe.

Phillips claims that Plaintiff was terminated for Job abandonment is unworthy of credence. Phillips does not have an absenteeism policy, see ( Exhibit "17" Deposition testimony of King at Page 27 lines 19-22)  and Phillips knew Plaintiff was not abandoning his job, (see  Exhibit "17" Kings deposition testimony Page 32 Lines 8-24.)   Accordingly there are factual issues or questions of fact about whether Plaintiff abandoned his job as are articulated by Defendant as the reason for Plaintiff's termination that is arguably unworthy of credence and precludes Summary Judgment. Going right to the "ultimate issue" of whether the plaintiff presented evidence from which a reasonable jury could find that, more likely than not, the employer's decision was motivated at least in part by discrimination. Any reasonable Jury could believe that it was unfair for Plaintiff to work for Phillips for 28 years of his work life then be terminated just because the Defendant claimed out of thin air that Plaintiff abandoned his job because he did not want to work on the console, this unfairness to which <u>Plaintiff was subjected to is unlawful if it is motivated by national origin, age or some other protected category.</u> This inexplicable unfairness and irrationally severe treatment of Plaintiff are strong indications of a discriminatory motive. Why would Phillips act in this unfair, irrationally harsh way to run off an employee who devoted

28 years in service to Phillips? Based on all the evidence, some seemingly innocent evidence that when taken together paint a mosaic of discrimination, is it more likely than not that discrimination was the motivating factor. See Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464–65 (2d Cir. 1989) ("In assessing the inferences to be drawn from the circumstances of the termination, the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file' that the firing is for a reason expressly prohibited by law. (quoting Thornbrough v. Columbia & Greenville R.R. Co., 760 F.2d 633, 638 (5th Cir. 1985)).and See Price Waterhouse v. Hopkins, 490 U.S. 228, 266 (1989) (O'Connor, J., concurring) (Where a plaintiff has shown that an illegitimate consideration was a "substantial factor" in an employment decision, "the employer may be required to convince the fact finder that, despite the smoke, there is no fire."); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir. 1992) (Even without a "'smoking gun,'" where "there is at the very least a thick cloud of smoke," the employer must "'convince the fact finder that, despite the smoke, there is no fire.'") (quoting Price Waterhouse, 490 U.S. at 266.

In this summary Judgment case, Phillips apparently has some very clever individuals on staff that discriminates in clever ways but in this case where there is smoke there is fire. See Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1043 (2d Cir. 1979) ("'[C]lever men may easily conceal their motivations . . . .'") (quoting United States v. City of Black Jack, 508 F.2d 1179, 1185 (8th Cir. 1974)); accord Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464–65 (2d Cir. 1989) ("In assessing the inferences to be drawn from the circumstances of the termination, the court must be alert to the fact that employers never going to include a notation in the personnel file noting that the firing is for a reason expressly prohibited by law. See Thornbrough v. Columbia & Greenville R.R. Co., 760 F.2d 633, 638 (5th Cir. 1985)).

While this nation is in the process to trying to rid itself of discrimination in any workplace, discriminating companies have no choice but to become more clever a secreting it true motive of running off older, sicker employees and those less desired motivated by their national origin , or those who insist on opposing unlawful employment practices and taking FMLA.

**FMLA Interference**

 For Plaintiff Huerta to establish a prima facie FMLA interference claim, the employee must show that (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA. Caldwell v. KHOU- TV, 850 F.3d 237, 245 (5th Cir. 2017).

Plaintiff alleges that the Phillips also interfered with his rights under the FMLA by terminating him his position before he could return from FMLA leave. As noted, the FMLA requires an employer to restore the employee "to the position of employment held by the employee when the leave commenced," or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. Â§ 2614(a) (1). "[T]he right to reinstatement upon return from leave is a right protected by FMLA's interference provision." Ford-Evans v. Smith, 206 F. App'x. 332, 335 (5th Cir. 2006); see also Mauder v. Metro. Transit Auth. of Harris Cty., Tex., 446 F.3d 574, 580 (5th Cir.

2006) (noting that "[a]n employee's right to return to the same position after a qualified absence" falls under the FMLA interference provision).

**FMLA Retaliation**

By the above facts, Plaintiff has also established a prima Facie Case of FMLA retaliation by demonstrating that he engaged in an activity protected by FMLA, that Phillips took an adverse employment action against him by termination him while on FMLA Leave and that there was a causal connection between the protected activity and the adverse employment action taken against him. Plaintiff has presented evidence above from which a reasonable jury could find that, more likely than not, the employer's decision was motivated at least in part by discrimination in violation of the family Leave Act.


**National Origin Discrimination:**

Likewise by the above facts Plaintiff has established a prima facie case of National Origin discrimination. Plaintiff suffered an adverse employment action when he was fired while on leave and his National Origin was a motivating factor. Plaintiff was qualified for the position from which he was terminated, he is in a protected class and the people who took over his duties were outside his protected class. Accordingly question of fact exist as to whether his national Origin was a

motivating factor even though there may have been other legitimate reasons for his

termination.

## Disability Discrimination

Under the ADA, a plaintiff must establish a prima facie case of discrimination by
demonstrating:

1) he or she is disabled;
2) otherwise qualified for the position, with or without reasonable accommodation;
3) suffered an adverse employment decision;
4) the employer knew or had reason to know of the plaintiff's disability; and
5) the position remained open while the employer sought other others to take over
his duties who were not disabled.

Based on the above facts genuine issue of material fact on his claim of disability

discrimination.

## Retaliation Under Title VII

By the above evidence Plaintiff has shown a plaintiff must show that: (1) he

engaged in protected activity; (2) he suffered a materially adverse employment

action; (3) he was meeting her employer's legitimate job expectations; and (4) he

was treated less favorably than similarly-situated employees who did not engage in

protected activity and that but for his engaging in a protected activity he would not

have been terminated.

 Plaintiff's Position is that his rebuttal evidence defeats summary judgment,

plaintiff has shown that there is a genuine issue of material fact as to whether the

employer's expressed reason for Plaintiff's termination was pretextual. And plaintiff has show pretext through evidence of disparate treatment and by showing that the employer's proffered explanation is false or unworthy of credence. Plaintiff's evidence demonstrating the falsity of the defendant's explanation, taken together with the plaintiff's *prima facie* case, supports an inference of discrimination even without further evidence of the defendant's true motive." *Sandstad*, 309 F.3d at 897.  Correspondingly the plaintiff should survive summary judgment because he has produced evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation and the evidence presents a sufficient disagreements to require submission to a jury, clearly the evidence is not so one-sided that one party must prevail as a matter of law. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc., supra*, at 251-52.

Accordingly, Defendant's Motion for summary Judgment should be denied.

Respectfully submitted,
Attorneys for Plaintiff
Cooper & Cooper
/S/ Gordon R. Cooper, II
Gordon R. Cooper, II.
Gordon@gordonrcooperii.com

3620 South Macgregor Way

Houston, Texas 77021-1504

CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, this pleading was served on opposing counsel as indicated below on January 14, 2021, via the District Court's electronic filing System.

Carolyn Webb
carolyn.webb@nortonrosefulbright.com
**Norton Rose Fulbright US LLP**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Shauna Johnson Clark
State Bar No.  00790977
Federal ID No. 18235
shauna.clark@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Heather Sherrod
State Bar No. 24083836
Federal ID No. 1734213
heather.sherrod@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

/s/ Gordon R. Cooper, II
_____.
Gordon R. Cooper, II
Gordon@gordonrcooperii.com
3620 South Macgregor Way
Houston, Texas 77021-1504
Telephone: 713-747-1446
Attorney for Plaintiff