Case 3:19-cv-00213   Document 34   Filed on 07/29/21 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 29, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JOSEPH HUERTA, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-cv-00213 |
| | § | |
| PHILLIPS 66 COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Plaintiff Joseph Huerta ("Huerta") alleges that Defendant Phillips 66 Company ("Phillips 66") discriminated and retaliated against him in the workplace in violation of federal law. Phillips 66 has filed a motion for summary judgment, *see* Dkt. 23, and a motion to strike a declaration filed by Huerta in his response to the motion for summary judgment. *See* Dkt. 26. After reviewing the summary judgment briefing, examining the record, and analyzing the relevant case law, the motion to strike is **DENIED**. I also recommend that the Motion for Summary Judgment be **GRANTED,** and this case dismissed.

**BACKGROUND**

Huerta is a Mexican-American born on April 1, 1968. He suffers from type 2 diabetes. Phillips 66 is a major American energy company, employing almost 14,000 individuals worldwide with its headquarters located in Houston, Texas.

Huerta worked for Phillips 66 as an Operator at the Sweeny Refinery for 28 years—from June 1990 until his termination effective June 8, 2018. As an Operator, Huerta was responsible for ensuring that the refinery equipment in his unit was maintained properly and in safe working order.

The events leading to Huerta's termination began on May 7, 2018. A few hours after working a full shift without any issues, Huerta told the lead operator that he felt sick and would not be reporting to work the following day, May 8. This

raised a few eyebrows at the company because Huerta had seemed unhappy on May 7 when Patrick Buentello ("Buentello"), the shift leader, told Huerta that he would have to perform console duties on May 8. After learning that Huerta had called in sick, Buentello told Jeff Farley ("Farley"), Huerta's direct supervisor, that he believed Huerta falsified the reason for not coming to work because he did not want to work the console. Confronted with this information, Farley contacted the Human Resources department to see if a private investigator could be retained to determine whether Huerta's stated reason for missing work (being sick) was true. Phillips 66 hired a private investigator and surveillance began. On the afternoon of May 8, the private investigator spotted Huerta making repairs to the roof of a commercial building in Bay City. On May 9, the private investigator again observed Huerta working on the roof of the same building. Later that evening, the private investigator witnessed Huerta coaching a Little League baseball game.

Although Phillips 66 viewed these activities as inconsistent with Huerta's alleged sickness, the company did not immediately fire him. On May 10, Huerta's doctor faxed Phillips 66 an incomplete Employee Health Report ("EHR"),[1] stating that Huerta suffered from "uncontrolled diabetic neuropathy" and could resume work on May 16. Dkt. 23-5 at 5. But Huerta did not report back to work on May 16. Instead, that day his doctor submitted another incomplete EHR. This one stated that Huerta needed to be off work due to his uncontrolled diabetes for another two months—to July 15. On May 17, Phillips 66 granted Huerta's request for approved leave under the FMLA, retroactive to May 8.

After receiving the initial EHR from Huerta's doctor, Phillips 66 officials reached out to Huerta to better understand his condition, limitations, treatment plan, and how he was able to perform the strenuous activities the private investigator documented, but not report to work. Phillips 66 maintains that it

---

[1] Phillips 66 requires employees who request leaves of absences to submit an EHR form to their physician. The physician must complete the EHR form and return it to the company.

contacted Huerta on nine separate occasions to discuss his absence from work, obtain additional documentation, and request that he submit to a medical evaluation at the refinery. Phillips 66 claims Huerta was not responsive to those requests. Huerta counters that he promptly responded to the company's calls and letters. For the purposes of this summary judgment motion, it does not matter whether Huerta was or was not quick to respond to the company's numerous inquiries.

On June 7, Huerta and Krystle King ("King"), a Phillips 66 Human Resources employee, finally spoke. King claims she told Huerta that the company had not yet terminated him for job abandonment, as she still wanted an opportunity to speak with him to discuss his absence from work and the lack of proper documentation verifying his need for medical leave. King directed Huerta to meet her at the Sweeny Refinery the next day, June 8, at 10 am. According to King, she specifically told Huerta that "if he declined to attend the meeting, he would be terminated for job abandonment." Dkt. 23 at 21. On the morning of June 8, 20 minutes before the scheduled 10 am meeting, Huerta called King and informed her that he would not be attending the meeting at the refinery. As a result, King recommended that Phillips 66 terminate Huerta's employment for job abandonment. The HR Manager concurred, and Huerta was terminated effective June 8.

Huerta claims in this lawsuit that Phillips 66 terminated him because of his age (50 at the time of this termination), disability (diabetes), and national origin (Mexican-American), and retaliated against him for taking leave under the Family and Medical Leave Act ("FMLA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Phillips 66 has filed a motion for summary judgment on all claims, asking me to dismiss this lawsuit in its entirety. Phillips 66 has also moved to strike a 22-page declaration filed as an exhibit to Huerta's summary judgment response. *See* Dkt. 26.

## MOTION TO STRIKE

Phillips 66 contends that Huerta's declaration is objectionable for a multitude of reasons: it is "conclusory, unsubstantiated, unspecific, without proper foundation, not based on personal knowledge, speculative, and/or constitute[s] inadmissible hearsay." Dkt. 26 at 1. Phillips 66 asks that I strike Huerta's declaration entirely, or, in the alternative, strike 19 specified portions of the declaration.

The Federal Rules of Civil Procedure provide that a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated." FED. R. CIV. P. 56(c)(4). After reviewing Huerta's declaration, I am reluctant to strike any portion of the document. Simply stated, I do not find the declaration to be rife with conclusory allegations, speculation, or unsubstantiated assertions. As far as Phillips 66's claim that certain statements in the declaration are hearsay, I note that the challenged statements all appear to be made by Phillips 66's employees. These statements are admissions by a party opponent, so they are not hearsay. *See* FED. R. EVID. 801(d)(2) (excluding from hearsay statements "offered against an opposing party . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

Given that I am required to view the evidence in the light most favorable to the nonmoving party at the summary judgment stage, I think the best approach is to fully consider Huerta's declaration as part of the summary judgment record. Defendant Phillips 66 Company's Motion to Strike Plaintiff's Summary Judgment Evidence is, therefore, **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow

a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

The movant "bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quotation omitted). To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019).

## ANALYSIS

A. **HUERTA'S DISCRIMINATION CLAIMS**

Huerta brings several discrimination claims against Phillips 66: (1) a disability discrimination claim under the Americans with Disabilities Act of 1990 ("ADA"); (2) an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"); and (3) a national origin discrimination claim under Title VII.

Unlawful discrimination may be established through either direct or circumstantial evidence. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Because Huerta relies on circumstantial evidence, I must utilize the familiar burden-shifting test set forth in *McDonnell Douglas Corp. v.*

5

*Green*, 411 U.S. 792 (1973) to analyze his discrimination claims. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *See id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant's burden is low—it is merely one of production, not persuasion. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) ("If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). If the employer articulates a legitimate, non-discriminatory reason for its employment decision, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

Huerta's discrimination claims fail because he is unable to make out a *prima facie* case of discrimination. To make a *prima facie* case of discrimination under the ADA, the ADEA, and Title VII, Huerta must show that (1) he is a member of the group protected by the relevant statute; (2) he is qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected group or was treated less favorably than similarly situated employees. *See Daigle*, 70 F.3d at 396 (ADA); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (Title VII); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (ADEA). Because the summary judgment evidence does not show that Huerta was replaced by someone outside of his protected class or was treated less favorably than similarly situated individuals who were outside his protected class, Huerta does not satisfy the fourth element of a *prima facie* case.

6

**Replaced By Someone Outside Of His Protected Class**: It is undisputed that Phillips 66 did not replace Huerta after his termination. Huerta's job duties were simply distributed among existing Phillips 66 employees. Under existing Fifth Circuit law, it is well settled that "when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." *Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) (quotation omitted). *See also Kean v. Jack Henry & Assocs., Inc.*, No. 3:12-CV-1159-B, 2013 WL 2983504, at *5 (N.D. Tex. June 17, 2013) (same) (collecting cases). For purposes of establishing his *prima facie* case, Huerta has thus failed to demonstrate that he was replaced by someone outside of his protected class.

Huerta argues that Phillips 66 elected not to replace him, but rather distributed his responsibilities to other employees as part of a carefully orchestrated plan "to escape liability." Dkt. 24 at 13. This hyperbolic statement has no legal significance. It is Huerta's burden to establish a *prima facie* case of discrimination. As noted, Huerta can do that by one of two ways: showing that (i) he was replaced by someone outside of his protected class; or (ii) he was treated less favorably than similarly situated individuals who were outside his protected class. Because Huerta has failed to demonstrate that he was replaced by someone outside his protected class for purposes of establishing his *prima facie* case, the question then becomes whether he can show that he was treated less favorably than other similarly situated employees outside the protected group (whether it be under 50 years-old, not disabled, or not Mexican American). I now turn to that issue.

**Treated Less Favorably Than A Similarly Situated Individual Outside His Protected Class**: At the heart of every discrimination case is the requirement that the employee must identify someone who received differential treatment. The fourth element of a *prima facie* discrimination case is thus met when a plaintiff demonstrates that "he was treated less favorably because of his

7

membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "Nearly identical" requires the employees being compared to have held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have had essentially comparable violation histories. *See id.* at 259–60.

Huerta is unable to show that Phillips 66 treated him differently than a similarly situated, younger, non-disabled, or non-Mexican-American employee under nearly identical circumstances. In fact, Huerta has not even bothered to compare his situation to that of any other Phillips 66 employee. As a result, Huerta "fails to point to any evidence from which a reasonable fact-finder could conclude that [Phillips 66] treated him any differently than it treated any other employee under the same or similar circumstances or that he was otherwise discharged because of his" age, national origin, or disability. *Carbaugh v. Unisoft Int'l, Inc.*, No. H-10-0670, 2011 WL 5553724, at *10 (S.D. Tex. Nov. 15, 2011).

Because Huerta has no competent summary judgment evidence to establish the fourth element of a *prima facie* discrimination case, dismissal is proper. *See Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 948 (5th Cir. 2020) (affirming summary judgment for failure to satisfy fourth element of a *prima facie* discrimination case).[2]

---

[2] Because I find that Huerta has failed to establish a *prima facie* case of discrimination, I need not engage in a detailed analysis of the additional steps of the *McDonnell Douglas* burden-shifting test. Even so, I should note that if Huerta satisfied the *prima facie* case, his discrimination claims would still fail for failure to present evidence of pretext. The discussion in the section below concerning pretext in connection with Huerta's retaliation claims applies with equal force to pretext as far as his discrimination claims are concerned.

**B.   HUERTA'S RETALIATION CLAIMS**

Huerta also asserts retaliation claims under the FMLA and Title VII.[3] Both the FMLA and Title VII protect employees from retaliation for exercising their rights under the respective statutes. *See* 42 U.S.C. § 2000e-3 (Title VII); 29 U.S.C. § 2615(a)(2) (FMLA). The familiar *McDonnell Douglas* burden-shifting framework applies to both these claims. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). To establish a *prima facie* case of retaliation under either statute, Huerta must show: (1) he engaged in protected activity; (2) Phillips 66 took a materially adverse action against him; and (3) a causal connection exists between the protected act and the adverse action. *See id.*

For purposes of the pending motion for summary judgment, I assume that Huerta can make out a *prima facie* case of retaliation. The burden then shifts to Phillips 66 to articulate a legitimate, non-discriminatory reason for its employment action. Phillips 66 maintains that it terminated Huerta for job abandonment because it "had a good faith belief that Huerta misused FMLA leave, . . . Huerta refused to provide the information requested to rebut its good faith belief, and then failed to report to a meeting with Human Resources to discuss their concerns." Dkt. 23 at 29. This is sufficient to satisfy Phillips 66's burden. *See Miedema v. Facility Concession Servs., Inc.*, 487 F. App'x 214, 218 (5th Cir. 2012) (employer's request for information to support FMLA leave, "together with its warning that noncompliance would result in termination," constitutes a legitimate, non-discriminatory reason for termination); *Cook v. E. Tex. State Univ.*, 142 F.3d 1279, 1998 WL 224599, at *1 (5th Cir. 1998) (job abandonment is a legitimate, non-discriminatory reason for terminating employee).

---

[3] In its reply brief, Phillips 66 argues that I should disregard Huerta's Title VII retaliation claim because it first appears in Huerta's summary judgment response, as opposed to the Original Complaint. I completely disagree. Although the Original Complaint, admittedly, does not provide much detail, it does specifically state that Huerta suffered damages "[a]s a direct and proximate result of [Phillips 66's] willful, intentional retaliatory conduct in violation of the FMLA and TITLE VII." Dkt. 1 at 10. This is, in my view, sufficient to put Phillips 66 on notice that Huerta is alleging a Title VII retaliation claim.

Because Phillips 66 has presented a legitimate, non-discriminatory reason for this its employment action, the burden shifts to Huerta to provide "sufficient evidence that [Phillips 66's] proffered reason is a pretext for retaliation." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378–79 (quotation omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Huerta has offered no summary judgment evidence that suggests Phillips 66's proffered reason for terminating his employment is pretext. Instead, Huerta merely restates his contention that he believes he was retaliated against for exercising his rights under the FMLA and Title VII. That's not enough.

It is undisputed that multiple Phillips 66 policies, including the FMLA policy, put employees on notice that the company may request additional information to verify or confirm a medical leave of absence. It is also undisputed that Phillips 66, in attempting to gather additional information about Huerta's medical condition, requested a face-to-face meeting with him. Despite being told that his failure to appear at such a meeting would be considered job abandonment and would result in termination, Huerta made the considered decision not to attend the meeting with representatives of the Human Resources department. He can hardly be surprised that termination ensued.

Huerta's position boils down to his belief that Phillip 66's decision to terminate him was "severe," "unfair," and "irrationally harsh." Dkt. 24 at 15. This subjective belief—no matter how heartfelt—does not constitute competent evidence from which a reasonable jury could infer pretext. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). Huerta's assertion of pretext "must be supported by more than mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for

his claim of pretext." *Anderson v. Goodyear Tire & Rubber Co.*, 367 F. Supp. 2d 1061, 1074 (E.D. Tex. 2004).

Phillip 66 puts it best: "That Huerta believes it is unfair that Phillips 66 did not accept his doctor's bald assertion that Huerta should remain off of work for months to manage his diabetes even though he still cannot explain today why he could perform the strenuous activities he was observed performing outside of work, is not evidence of pretext." Dkt. 25 at 8. "Simply stated, Phillips 66's legitimate inquiries into the truthfulness of [Huerta's] absences do not establish pretext." *Rodriguez v. Phillips 66 Co.*, No. 3:19-CV-00209, 2021 WL 2942234, at *6 (S.D. Tex. June 4, 2021). *See also Miedema*, 487 F. App'x at 217 (affirming summary judgment for the employer on an FMLA retaliation claim, noting that an employer is entitled to seek additional information when the information provided by the employee is either incomplete or insufficient); *Palmer v. Sw. Bell Tel., L.P.*, No. A-06-CA-478-SS, 2007 WL 9701631, at *7 (W.D. Tex. Mar. 15, 2007) ("Even medical excuse notes offering some minimal explanation of the patient's condition and absence are insufficient FMLA certification where they do not offer information legit[i]mately requested by the employer's FMLA medical certification forms.").

Because Huerta has not shown any evidence that Phillips 66's proffered reason for his termination was merely pretext, summary judgment is appropriate on the FMLA and Title VII retaliation claims.

C.   HUERTA'S FMLA INTERFERENCE CLAIM

Huerta's summary judgment response asserts, for the very first time, an FMLA interference claim. This claim is nowhere to be found in Plaintiff's Original Complaint, the live pleading in the case. The Fifth Circuit has expressly held that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Because Huerta's pleadings fail to provide Phillips 66 with fair notice of an FMLA

11

interference claim in his Original Complaint, I decline to consider such a claim now. *See Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016 ("[A] district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard."). As an aside, even if properly pled, the FMLA interference claim also fails because it is duplicative of his FMLA retaliation claim. *See Garcia v. Randolph-Brooks Fed. Credit Union*, No. SA-18-CV-00978-OLG, 2019 WL 1643741, at *3 (W.D. Tex. Apr. 16, 2019) ("Although a plaintiff can technically pursue both an interference and a retaliation claim, where the essence of the two claims is identical, the court may dismiss the duplicative claim.").

## CONCLUSION

For the reasons explained above, Phillip 66's motion to strike (Dkt. 26) is **DENIED**. I also recommend that Phillip 66's Motion for Summary Judgment (Dkt. 23) be **GRANTED**. This case should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed this 29th day of July 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE